Ms. Bain, are you ready? May it please the Court. As this Court has often said and has recently said, it is rare, indeed, that a jury verdict should be set aside. This was not the case for that, especially where here the parties had entered into an agreed settlement agreement and a stipulation that narrowed the scope of the case and the  The trial court, we are asking this Court to reverse the critical error committed by the trial court in failing to honor the stipulated settlement agreement that was submitted to it and made a part of the plaintiff's, of Occidental's pleadings. That settlement agreement in clear and unambiguous terms stated that final judgment was to be entered or shall be entered, not was to be, but shall be entered based on the jury's answer to the sole question that was submitted to it. The trial court disregarded that, allowed Occidental to file a motion for judgment as a matter of law post-verdict, and reversed the jury's verdict. If the court had entered the judgment that the stipulation required, this Court's job would have been much simpler. It would have been a plain error review of a jury verdict. It's not any different than a case where a party fails to file a Rule 50B motion or fails to file a Rule 50A motion, which precludes the Rule 50B motion. In all of those cases, this Court has held that that person waives their right to de error only. That is what we think should have happened here. Alternatively, we've suggested that even if you conduct a de novo review, which again, we don't think is appropriate here, that there was substantial evidence to support the jury's verdict and the trial court incorrectly applied the law when it conducted its de novo, its judgment as a matter of law. It erred in three ways. First, it decoupled the evidence. Second, it substituted its own judgment as to the credibility of the witness and the weight of the evidence, and which evidence to consider and which to not. And finally, it applied the wrong Texas law to the language of the policy, because it applied a case that did not, that was interpreting a rise out of, but had nothing to do with a rise out of the use of something. And this policy, clearly the exception required for the exception to apply, the injury to arise out of the use of a controlled substance. The stipulations in the settlement agreement were not ambiguous. The trial court nor Occidental had the right to change the party's agreement. It was very clear that the parties agreed that final judgment shall be entered based upon the answer to a stipulated jury question. That didn't happen here, and as a result, this appeal was sort of turned upside down. The closest case that I believe demonstrates under Texas law how critical this error is, is the Pathfinder versus Great Western Drilling case. It's a Texas Supreme Court case at 2019 that is similar. There the parties stipulated that only certain issues would be submitted to the jury and that favorable jury findings would entitle Pathfinder to specific performance in lieu of money damages. The trial court honored the jury's verdict and entered judgment granting specific performance to Pathfinder. The court of appeals set it aside, finding that Pathfinder had failed to prove one of the elements of specific performance. And the Supreme Court reversed, basically holding that the agreement unambiguously prescribed or fixed the issues on which the case was to be tried and therefore waived or eliminated issues that were excluded. Here our argument is that Occidental waived its right to have a de novo review of the jury verdict. It knew when it entered the settlement agreement, as it has argued in its brief, that a Rule 50B motion would be required for a de novo review because this court's case law is very clear that if that doesn't happen, you get a plain error review. It undertook that agreement and when it didn't like the outcome, the jury's verdict, it attempted to repudiate its agreement by presenting a motion for judgment as a matter of law post-verdict. The trial court was aware of the stipulation. It was raised numerous times during the trial. It was filed with the trial court and it was attached to the plaintiff's pleading. The trial court also didn't have authority to disregard the stipulation. I think the city of Keller case is the Texas case that states that a trial court cannot disregard the stipulation. And I think we have cited the court to in re oil spill of Deepwater Horizon in our reply brief, which traces why public policy reasons, the courts should enforce the party's agreement. In addition, Texas has a statute to protect settlement agreements. And just to remind the court, the settlement agreement in this case was entered in the underlying tort lawsuit in state court. The Cox's agreed to give up their claims in state court against Zinkweg in exchange for this settlement and the stated purpose of the settlement agreement was to narrow the scope of the coverage suit, this suit, and to expedite it. And that is on, I believe, paragraph nine of the settlement agreement, which is tab nine to our record excerpts. And it's expressly states that the purpose of the agreement is to narrow the scope of this case. So by disregarding that stipulation and allowing a motion for new trial, the trial, I mean, a motion for judgment as a matter of law, excuse me, the trial court invited a de novo review in this appeal that should have never happened. Occidental has argued that the Cox's waived their stipulation. I would point the court to three simultaneously filed pleadings in which the Cox's asked the court to enter judgment on the verdict based upon the stipulated settlement agreement. It is a motion to sever because as this case was originally filed, there was also a duty to defend issue separate from the duty to indemnify issue. So the motion to sever was basically saying the stipulation requires entry of judgment based upon the jury's answer to this question. We need to sever the case from the other part, which has to do with the duty to defend and enter judgment based upon the jury's answer. It expressly references the stipulation and the settlement agreement. That was on March 4th of 24, right after the trial. A few days, March 14th, I'm sorry. The same day, the Cox's filed a motion for entry of final judgment based upon the settlement agreement and asked the court to honor the stipulation and enter judgment based upon the jury's answer to the single question they were asked to answer. They also amended the motion for entry of final judgment and raised the stipulation at least twice during the jury trial, including during the charge conference. It is absolutely well settled under Texas law, and this is a diversity case, that absent fraud, mistake, or other circumstance going to the validity of the agreement itself, a settlement voluntarily entered into may not be repudiated by either party or set aside by the court. The federal cases that discuss that policy are set forth in the NREG Deepwater Horizon case and the City of Keller case is the one, it's the Texas case that sets forth the same policy under Texas law. If the court determines that it does not need to set aside the judgment and reinstate the verdict based upon the stipulation, we would suggest to the court that there's still substantial evidence to support the jury's verdict and that the court's grant of judgment as a matter of law was in error. We would point the court to, and I think it's cited in our brief, is Sahls v. 24 Hour Fitness, where this court reversed a grant of judgment as a matter of law, and also to the Siebert v. Jackson County, Mississippi case, that's 851F430, Fifth Circuit, 217, also granting or setting aside, let me start over, reversing the grant of a judgment of a matter of law. The Siebert case is very interesting when you compare it to this case. It's one of the few cases where there were competing motions for judgment as a matter of law, so it analyzes the standard from both sides, but one of the judgments as a matter of law was granted. The court reversed it, and it reversed it on an issue that is very similar to what happened in this case. Siebert was a sexual harassment case combined with an intentional infliction of emotional judgment for motion, motion for judgment as a matter of law, the trial court decided to decouple the evidence, that's the term that the Siebert case uses, basically refusing to consider the evidence of harassment in connection with the intentional infliction of emotional distress claim. And so the court divided the evidence based upon the evidence, based upon the claim that was being reviewed on the judgment as a matter of law, and it granted judgment as a matter of law, took away the jury's verdict on the intentional infliction of emotional distress claim. This court held that that was error, and it was a clear violation of the standard in reviewing a jury verdict in the context of a motion for judgment as a matter of law. Basically, the court held by decoupling the evidence and considering only testimony that related to non-sexual conduct, the district court plainly ignored this court's direction to consider all of the evidence, drawing all reasonable inferences, and resolving all credibility determinations in the light most favorable to the non-moving party. That's the standard that this court follows in considering a motion for judgment as a matter of law, because including Saul's, Siebert, the Good River Farms v. TXI operations, and Lewis v. Board of Supervisors of Louisiana State University are all recent cases that articulate that standard. All evidence in favor of the non-movement should be considered, and any evidence that the jury is entitled to disregard should be disregarded. That's not what the trial court did here. It decided that it only needed to show an incidental relationship between the delay in treatment and Christopher's injuries, and that's not the proper standard under Texas law. But in so doing, it totally ignored all of the other evidence that was presented at trial by Dr. Stampus, who was the only expert, by the way, who testified that the only possible cause of Christopher's ultimate injury, the bilateral jump facets which caused the quadriplegia, was the mishandling of Christopher after he had fallen to the floor, and the failure to stabilize his neck and back, throwing him on the bed, all of that other stuff, because even though the delay in treatment could have caused the injury to become more severe, it could not have caused that ultimate injury. And the delay in treatment is most often associated with the fact that the sooner you get the patient to surgery, the more likely you're going to have a favorable outcome. You may have heard the term, time is fine. That's where that comes from. But the delay in treatment most certainly did not cause the ultimate injury. Thank you, Ms. Baines, and I see you've reserved time for rebuttal. I'm going to keep the microphone just a little bit away. I'm told that I shout too much as it is. May it please the Court, my name is Greg Hudson, and I have the pleasure of representing Occidental Fire and Casualty of North Carolina in today's appeal. I think, Your Honors, what you've just heard is the appellant's attempt to recast or redefine not just the facts at trial, but the agreement between the parties, such that it contains language that it absolutely does not contain, so that the trial evidence was something that it absolutely was not, and to challenge Judge Hanks's very thorough review in which he went through every single one of the witnesses, gave credence to what every single one of the witnesses said, and then applied the but-for causation standard, which is required under Texas law, determining that Christopher Cox's injury could not have occurred but for the use of LSD. It may not have been the primary cause, it may not have been the most significant cause, but the only reason that Mr. Cox was in the position he was, vulnerable as he was, delay in treatment that he was, was because of the use of LSD, because of his compatriot's failure to apprehend his condition due to being so high he didn't know what country he was in, being so high that rather than call for actual medical aid, he instead called a friend to shimmy up literally the garden spout so that he would not wake the parents, and therefore have to confess to the use of LSD. The decision to leave Mr. Cox on the floor and then on the bed, the very delay in treatment, was all in an effort to avoid being caught out using LSD. The decision to render medical care by moving Mr. Cox from the floor to the bed without stabilizing his neck, a decision made while high as a kite on LSD, rather than again call for medical aid, which no one doubts or disputes would have happened but for the use of LSD. You started off your argument going through the various witness testimony that the trial judge considered in granting the renewed motion for the JMOL. Did that entry, did the analysis section of that entry discuss at all that Mr. Azar was completely sober when he assisted with moving Christopher? Absolutely it did, and Judge Hanks considered the fact that the decision to call a friend as opposed to call 911 or get parental assistance was the result of Mr. Zinkweg's desire to avoid having to admit to what he had taken and what had happened. And would you agree or disagree that there was sort of a dispute about what Mr. Zinkweg's cognitive capacity was at that time? Well Mr. Zinkweg admitted that at the time the relevant decisions were made, he absolutely was still high and still under the influence. By the time several hours had passed and he started to quote unquote sober up, that was when he realized we have a different problem here, that was when he actually went and alerted his parents. Does the analysis section of that order mention Dr. Stampas' belief that Zinkweg and Azar's movement of Christopher's body being one of the factors that may have caused? Absolutely it does. Judge Hanks specifically called out the decision and the delay in seeking treatment due to the LSD, the decision to call for a friend rather than call for medical help. Absolutely. But doesn't the context of Dr. Stampas saying that he believes that contributed to the bilateral jump facets that are present here? It did and absolutely it did contribute to that at least if you believe Dr. Stampas. But remember we're not here to talk about did something else contribute. The standard under Texas law is but for causation. Did LSD at some point in the chain of events lead to this injury? If the answer is yes, then the injury arose out of the use of LSD. It's one of those law school problems that our torts professors used to challenge us with. There is a difference between proximate cause, primary cause, producing cause and then but for causation which means something somewhere in the sequence of events and that's all it has to be. There's evidence that the lifting of Cox caused the injury. How do you deal with that evidence? Sure Your Honor. Two ways and Judge Hanks noted these as well. The decision to provide medical care without stabilizing Mr. Cox. The decision or rather the lack of proper perception that there might be a more significant medical issue which then enabled Mr. Zinkweg and his friend having climbed up the garden pipe to get into the room to provide that very medical aid. That was all the result of Mr. Zinkweg's poor perception of the situation and poor decision making because of the drug use and the desire to not confess to the drug use. So again, even if you consider that movement per se was a cause of injury. It still ignores the fact that Mr. Azar was not, there's nothing in the record that says he was not sober at the time. I mean we're focusing on Zinkweg and whether or not he was diminished or what have you but the other party there was no issue or question as to whether or not that person was sober. And that's correct Your Honor. As far as we're aware Mr. Azar may or may not have been sober. He had been up all night. What effect that has I'm not certain but remember the language is not all persons. It is any person. Any person's use. Any person's use that contributed in any causal way means that the jury would have had to have responded to the question differently than they did and that's what Judge Hanks noted. And that's a very clear standard under Texas law. That's the Utica case. That's the first American case. Anything in the line of causation by any person. To switch to another beat on this and the arguments that have been made, there's at least an initial question about whether or not the appellant can try to foreclose our ability to make these arguments. The appellant wants to argue that a settlement agreement somehow contains language suggesting that Occidental waived its appellate rights but for a plain error review. That argument was never raised to the trial court and as appellant's said there were lots of briefs filed in the trial court. Not a single one of them references a loss of appeal rights by Occidental. The response to our renewed JMOL motion, the logical place you would have raised this kind of an issue, does not mention, does not suggest that any language anywhere, any agreement anywhere, constitutes a waiver by Occidental of its appellate rights or its rights to bring a Rule 50B renewed JMOL motion because it's not there. Appellant's counsel suggests that on multiple occasions the appellant asked that judgment be entered according to the stipulation. They did but that's apples and oranges, Your Honor. They're asking for judgment to be entered. What they should have been saying if they wanted to preserve this issue is not can judgment be entered but is Occidental foreclosed from raising appellate issues? Those are two very different things. At most what you might think is that Judge Hanks placed some form over substance, that he should have entered judgment and then consistent with normal practice, considered the Rule 50B renewed JMOL motion. At which point we preserved our rights, at which point Judge Hanks is free to overrule the verdict as he sees fit. But in any event, that would be normal practice. It would follow from the entry of a final judgment which is one which simply resolves all claims and controversies that are existing from the trial court and enabling the appellate practice to go forward. To suggest that that agreement, that stipulation says anything else absolutely attempts to rewrite the agreement. There is no language in that agreement whatsoever that supports the argument that the appellant now attempts to make. It's not there. When we talk about deference to a trial court's verdict, I think Judge Hanks gave extreme deference to the verdict of the jury. I'm not going to pretend that I know why the jury did what they did. But Judge Hanks absolutely looked at the testimony of every witness offered by the appellant, considered all the arguments that the appellant was making, said I have looked at and considered all inferences and all evidence, taking it all in their favor. But here's the problem and here's what the appellant continues to ignore. There is unrefuted testimony, which everybody agrees to, about how the use of LSD impacted the perceptions and the decision making placing, at this point, Mr. Cox in the vulnerable position he was in. You can't ignore it. Judge Hanks didn't ignore it. It is unrefuted. Everybody agrees to it. Dr. Stampus agreed to it. And by the way, it's extremely inaccurate to say that Dr. Stampus testified that the only cause of the jump facet was anything. Our expert at trial, Dr. Lau, an actual spinal trauma surgeon, as opposed to Dr. Stampus, who specializes in rehabilitation after surgery, specifically testified to the contrary. And there were challenges to Dr. Stampus that any idea that he was providing adequate causation testimony would fail under Daubert. But we haven't raised those arguments here. That is a waiver on our part of that objection. And the reason is because, as Your Honor has just highlighted a moment ago, Dr. Stampus unequivocally said, two things happened. Delay in treatment, LSD use. Decisions about how to provide care, bad judgment because of LSD. And the desire to do that treatment in a way that would not alert Mr. Zinkwage's parents to what they had done. You can't get away from it. It is the fruit of the poisoned tree. That's but for causation. The final set of arguments that the appellant raises concerns the use of the word use in connection with the phrase arising out of. And I'll start out by reminding the court that although we asked about use in the jury form, the actual insurance exclusion in effect is not so limited. That exclusion specifically excludes any bodily injury or property damage arising out of the use, the possession, the manufacture, the sale, or the distribution, not just of LSD, but of any controlled substance. It's an exclusion commonly found within homeowner's policies. And what it means in this case is while we are all deeply sympathetic to Mr. Cox and his injury, this is not what Occidental signed on for. This is not the kind of risk that we agreed to undertake. We didn't want anything to do with anything that even remotely touched a controlled substance use. And the cases cited by appellant talking about arising out of the use come out of an auto policy where that phrase is found in the grant of coverage. And of course an auto policy is a much different beast. An auto policy follows the car, not the actor, and therefore use arising out of is specific to a car. Here it's much different. And the language and the exclusion is much different. And it's done for different effect because we don't want anything to do with anything having to do with controlled substances. But even if you were to accept the argument that the appellant is making, remember, what is the problem? Why would somebody exclude LSD use from coverage? Because it affects your mind. It affects your perceptions. It affects your decision making. And people who are not adequately perceiving reality, not reacting to it properly, not making proper judgments, they tend to have problems. We don't want any part of that. That's why it's excluded. So even if you accept the argument that the appellant is making, you would still be forced to conclude that the use of LSD, the use arising out of, compels a finding in favor of Occidental. And it was that very logic that Judge Hanks recognized when he granted the renewed JMLL motion. Your Honors, I have a few minutes left, but I think that's actually all I have to say. If Your Honors have any other questions, I'd be happy to entertain them. Otherwise, I will cede my time back to the Court. Any questions? Thank you. Thank you, Your Honors. Ms. Baines, I think you have five minutes on rebuttal. I'm always told my voice is too low. Okay. Let me start with my colleague's suggestion that I'm changing the language of the stipulation. It's in the stipulation filed with the Court, but at tab 9, page 3 of the agreement, the agreement required stipulating in the coverage suit that a final judgment shall be entered against Occidental if the fact finder answers the sole fact question in the negative. A final judgment means he wasn't going to be able to file post-judgment motions. If it said that a judgment shall be entered, I think it would be ambiguous, perhaps, but because it required a final judgment, that is an affirmative concession that there would be no post-judgment, post-verdict practice. And it fits and is consistent with the express purpose of the statute. The agreement to expedite the coverage suit. But, counsel, if that's the case, then why have the other provisions specifically permitting appeals and providing for appeals? Doesn't a post-judgment motion preserve the appeal? They would have been entitled to appeal without a post-judgment motion. The difference would have been in how this appeal, it would have narrowed the scope of this appeal. It's no different from the multitude of cases where the courts disallow de novo review and employ plain error review, either because a party has not filed a post-judgment motion for judgment as a matter of law or because it doesn't match the pre-verdict motion for judgment as a matter of law. In all those cases, the courts hold that the parties have waived their right to de novo review and the court merely conducts a plain error review. So the parties contemplated an appeal. What they were doing was contracting to narrow the scope of the appeal and narrow the scope of the trial. Again, the word final judgment cannot be a judgment that can be set aside on a motion for judgment as a matter of law. But isn't narrowing the scope of appeal different from agreeing on what the appropriate standard of review would be on appeal? I think, I guess my best way I can answer that is going to their argument in their brief. They claim that, and clearly they knew this, you have to file a motion for judgment as a matter of law in order to be able to obtain a de novo review. They knew that when they signed this agreement. They had very capable lawyers representing them. Yet, they agreed otherwise. And they made the appeal in the stipulation section, if you look, it says subject to the conditions in paragraph 8 on appeal. The parties are able to contract and limit their scope. That's what Pathfinder is all about. And that's what happened here. But again, I also want to take, before I run out of time, I want to address the issues of substantial review quickly. Counsel totally misrepresented Dr. Stampus' testimony. And I know they didn't, the jury was free to disregard any expert's testimony they chose to. There's ample case law on that. They chose to disregard their expert's testimony. Dr. Stampus, and I think it's quoted in my reply brief, his testimony is not that the delay caused the bilateral jump facets. His testimony is that there are two possible factors that added to the severity of the injury. One being the delay, but the second being the movement. And based upon the evidence in the record, only the movement, without stabilizing the spine, would have had the ability to convert what was initially a perched facet, a temporary injury, to a permanent bilateral jumped facet. Was your client injured by the fall from the bed? Yes. The evidence is that he was injured. And Dr. Stampus testified that he believes that the initial injury was what he called a perched facet. It's a temporary injury. He would have probably recovered almost completely from it, with the exception that he would have had some weakness in his arms and legs. But it was all three experts, even Occidental's experts, agreed that the fall from the bed could not have caused what was the final injury. Final injury and injury are two different things. I want to talk about the initial injury. Would your client have been injured or fallen off the bed, but for the use of the LSD? How do we start the clock at the fall, as opposed to what led up to the fall, if the fall caused the initial injury that was exacerbated by the delay in the manner in which he was lifted? I think it wasn't exacerbated. I think it was a second injury. Perhaps the way I look at it is an intervening cause that caused what was the ultimate injury. But there was really not even any proof in the record that what these boys took was LSD. There was no lab test. Dr. Stampus had some contravening evidence about what the expected effects would be. Instead of it causing what you would expect from LSD, Christopher went to sleep after taking two of the tablets. Was there also some dispute in the record about whether or not he did have some movement, whether he fell out of the bed and was on his stomach, and then at some point in between the time that he fell out of the bed and moved, he had turned over and he was faced up to the ceiling? Is that a part of the record? I think in the record it says that Sami Azar and Ryan turned him over. That's the evidence in the record. You are 100% right, Judge Douglas. There's no evidence. It's uncontested in the record. Sami Azar had not had any controlled substance. He was completely sober. He climbed up and down a rope. By the time that happened and by the time they moved him, Ryan was sober enough to tell him how to climb up and down the rope. I want to just briefly give you one last case. It's in my briefing. Your time is up, but your case is submitted. Thank you.